# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| RAM GEHANI a/k/a TARO GEHANI, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-17-205 |
| AMERICAN ZURICH INSURANCE CO., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

After a fire damaged Plaintiff Ram Gehani's real property, which he had insured with Defendant American Zurich Insurance Company ("Zurich"), and Zurich denied his claim under the insurance policy, Gehani sued Zurich for breaching the policy. Zurich has moved for summary judgment and, because Gehani failed to substantially comply with the policy's requirements for filing a proof of loss, I will grant the motion.[1]

## Background[2]

Zurich provided builder's risk coverage ("Policy") to Gehani for the property located at 1933 McHenry Street in Baltimore, Maryland ("the Property"), for the period of April 1, 2014 through April 1, 2015. Jt. Stmt. ¶¶ 1–2, ECF No. 22-3. The Policy imposed the following duties on Gehani:

---

[1] The parties fully briefed the motion. ECF Nos. 22, 22-1, 23, 23-1, 24. A hearing is not necessary. *See* Loc. R. 105.6.

[2] I consider the facts in the light most favorable to Gehani as the non-moving party, drawing all justifiable inferences in his favor. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009).

> You must see that the following are done in the event of loss or damage to Covered Property:
>
> . . .
>
> 2. Give us [Zurich] prompt notice of the loss or damage. Include a description of the property involved.
>
> 3. As soon as possible, give us a description of how, when and where the loss or damage occurred.
>
> . . .
>
> 6. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.
>
> . . .
>
> 8. Send us a signed, sworn proof of loss containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
>
> . . .
>
> 10. Cooperate with us in the investigation or settlement of the claim.

Policy 24, Jt. Ex. 1, ECF No. 22-5.[3] The Policy provided that "[n]o one may bring a legal action against [Zurich] . . . unless . . . [t]here has been full compliance with all the terms of this Coverage Part . . . ." *Id.* at 25.

The Property was damaged by fire on October 21, 2014, and "Gehani learned of the loss 'six days' after the fire." Jt. Stmt. ¶¶ 5–6 (citations omitted). Plaintiff contends that he "received a copy of the initial report from the Baltimore City Fire Department sometime after November 5, 2014, and provided a copy of the same to the Defendant soon thereafter." Pl.'s Opp'n 3 (citing Gehani Dep. 28:1–14, Jt. Ex. 4, ECF No. 22-8). But, at his deposition, he testified that "two to

---

[3] The Property is located in Maryland, and Gehani applies Maryland law to this contractual dispute. *See* Pl.'s Opp'n 2–3, 5. Zurich applies Maryland law, as well as D.C. law, and does not challenge Gehani's application of Maryland law. Def.'s Mem. 4–5; Def.'s Reply 1–2. Accordingly, I will apply Maryland law. The language and meaning of the Policy is clear and undisputed, and therefore I "construe it as a matter of law." *Culver v. Cont'l Ins. Co.*, 1 F. Supp. 2d 545, 546 (D. Md. 1998) (applying Maryland law), *aff'd*, 11 F. App'x 42 (4th Cir. 1999). Because the Policy's pages are not sequentially numbered, I cite to the corresponding page numbers on CM/ECF.

2

three days" after the fire department called him to inform him about the fire, he "went to the fire department to collect the report." Gehani Dep. 26:15–17. He also testified that he received the Incident Report "10 to 15 days . . . after the fire." *Id.* at 28:23–29:1. Thus, taking the evidence in the light most favorable to Gehani as the non-moving party, the fire happened on October 21, 2014; Gehani learned about it on October 27, 2014; and he obtained the Incident Report between October 29 and November 5, 2014. Additionally, while the deposition page he cites includes his testimony that he "contacted the Zurich company" and "file[d] a claim with Zurich for this fire," he did not state when he provided the Incident Report to Zurich. *See* Gehani Dep. 28:1–25. And, he stipulated that he "notified Zurich of the loss on December 11, 2014." Jt. Stmt. ¶ 7.

"Zurich requested documentation from Gehani on December 29, 2014, including: expert reports, repair estimates, photos, and other related information. Gehani did not respond to Zurich's December 29, 2014 letter." Jt. Stmt. ¶¶ 8–9. Gehani retained counsel and provided Zurich with a letter of representation, which it received on January 6, 2015. *Id.* ¶ 10. Thereafter, Zurich "requested Gehani's recorded statement and other documentation." *Id.* ¶ 11. Although he stipulated that he never provided a recorded statement, *id.* ¶ 12, Plaintiff contends that he "was willing and prepared to submit to a Statement Under Oath, but the same was canceled by Defendant," Pl.'s Opp'n 1 (citing Emails, Pl.s' Ex. 3, ECF No. 23-5). The emails between the parties' attorneys show that a recorded statement was scheduled for July 17, 2017, but did not take place. Emails 2. Gehani testified that Zurich sent an adjuster to the Property, but he did not state when that happened or what the adjuster learned, noting that he expects that Zurich's response to his document production requests will include the adjuster's report. Pl.'s Opp'n 4 & n.1 (citing Gehani Dep. 19:4–8, 27:17–25, 32:7–8, 49:6–21).

3

Zurich sent a letter on July 2, 2015 "formally request[ing] from Gehani a 'proof of loss within 60 days of the date of th[e] letter.'" Jt. Stmt. ¶ 13. The letter directed Gehani to include with the proof of loss

> all necessary supporting documentation to substantiate his claim, including but not limited to, the following:
>
> 1. All permit applications, permits, and related correspondence for any repair, maintenance or renovation work performed at the property from January 1, 2010 to date;
>
> 2. All proposals, estimates, contracts and related correspondence for any repair, maintenance or renovation work performed at the property from January 1, 2010 to date;
>
> 3. All notices, orders, correspondence and other documentation relating to housing and/or zoning code violations at the property from January 1, 2010 to date;
>
> 4. If the property was leased at any time from January 1, 20108 [sic] to date, copies of any lease agreements;
>
> 5. All loan applications, loan agreements and monthly statements for any loans obtained to repair, maintain or renovate the property from January 1, 2010 to date;
>
> 6. All utility records for the property reflecting electric, gas, cable and telephone use at the property from January 1, 2013 to date;
>
> 7. Any photographs of the property reflecting any repair, maintenance and renovation work performed at the property from January 1, 2010 to date; and
>
> 8. Any police reports generated as a result of the fire that occurred on October 21, 2014.

July 2, 2015 Ltr., ECF No. 22-12. Gehani did not respond. Jt. Stmt. ¶ 14. On September 30, 2015, Zurich denied Gehani's claim under the Policy for failure to comply with the Policy's conditions. *Id.* ¶ 14.

Gehani ultimately submitted "documentation, including partial bank statements and water bills," on March 9, 2016, Jt. Stmt. ¶ 15, and that same day he wrote to the Office of the Fire Marshal, requesting a copy of the Fire Marshal's report, but his letter was returned with the note:

"NO INCIDENT FOUND." Ltr. to Fire Marshal, Pl.'s Ex. 2, ECF No. 23-4. Yet, he "never submitted a proof of loss." Jt. Stmt. ¶ 15.

Gehani filed suit for breach of contract against Zurich in the Circuit Court for Prince George's County, Maryland, ECF No. 2, and Zurich removed the case to this Court, ECF No. 1.

## **Standard of Review**

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

## **Discussion**

Zurich argues that, because Gehani did not "cooperate with Zurich's investigation of the claim" or respond to its request for "a 'proof of loss within 60 days,'" his "breach of contract claim is barred for failure to 'full[y] compl[y] with all policy terms'" and as a result, Zurich is

5

entitled to judgment as a matter of law. Def.'s Mot. ¶¶ 2–5. Gehani counters that genuine disputes of material fact exist "as to whether Plaintiff substantially complied with the terms of the contract when it provided the Fire Marshal report and associate[d] financial records, as well as allowing Defendant to inspect premises and making himself available for a statement under oath." Pl.'s Opp'n 6. He also contends that "there is a question as to whether Defendant has shown, or alleged, any actual prejudice as a result of any late, incomplete, or missing materials offered by Plaintiff." *Id.*

As for prejudice, it is true that, "[i]n Maryland, an insurer may not disclaim coverage on a *liability* insurance policy on the basis that an insured breached the policy by failing to cooperate or by not giving required notice, unless the insurer establishes that the breach resulted in actual prejudice." *Phillips v. Allstate Indemn. Co.*, 848 A.2d 681, 690 (Md. Ct. Spec. App. 2004) (emphasis added) (citing Md. Code Ann., Ins. § 19-110; *Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 767 A.2d 831 (Md. 2001)). But, "[b]y its plain language, Ins. § 19-110 applies to a '*liability* insurance policy,'" which "'generally [is a policy] issued for the benefit of third parties who are injured and have a claim against a tortfeasor.'" *Id.* at 691 (quoting 7 *Couch on Insurance* § 104:8 (3d ed. 2003)) (emphasis added). The Policy at issue here is a builder's risk policy, not a liability insurance policy. *See* Policy 3, 5–8 (outlining coverage and stating that "Covered Cause Of Loss means risk of direct physical loss or damage to Covered Property"); *see also Phillips*, 848 A.2d at 690–91 (concluding that § 19-110 did not apply to claim under "Indemnity Motorcycle Insurance Policy" that "included protection against loss of the motorcycle," where there was no third-party claim involved); *W.M. Schlosser Co. v. Ins. Co. of N. Am.*, 600 A.2d 836, 838 (Md. 1992) (distinguishing a "Contractor's General Liability Policy" that was "intended to protect the insured against claims made by others for damages the insured

has a legal responsibility to pay" from an "all risks or builder's risk policy"). Where, as here, there is "no third-party claim . . . , Ins. § 19-110 [i]s not applicable." *Phillips*, 848 A.2d at 691. Therefore, Zurich is not required to show actual prejudice in order to disclaim coverage in this case.

Thus, the determinative issue is whether Gehani substantially complied with the Policy's requirements that he cooperate with the claim investigation and provide a proof of loss statement, and if so, whether this sufficed to obligate Zurich to pay.[4] In support of his position that he substantially complied with the Policy terms, Gehani relies on *Hartford Fire Ins. Co. v. Himelfarb*, 736 A.2d 295 (Md. 1999), Pl.'s Opp'n 2–3, the same case Zurich relies on in support of its position that Gehani's "complete failure to provide a proof of loss . . . independently warrants summary judgment in Zurich's favor," Def.'s Reply 1; *see also* Def.'s Mem. 4. There, the Himelfarbs had an insurance policy for their commercial property. *Himelfarb*, 736 A.2d at 297. It provided that the insurer would "pay for covered loss or damage within 30 days after [it] receive[d] the sworn proof of loss, if [the insureds had] complied with all of the terms of this Coverage Part"; one term was that the insureds would send the insurer "a signed, sworn proof of loss containing the information [Hartford Fire Ins. Co.] request[ed] to investigate the claim. . . . within 60 days after [the insurer's] request." *Id.* This term is substantially the same as the proof of loss term in the Policy at issue in this case. *See* Policy 24 ("Send us a signed, sworn proof of

---

[4] Underlying this issue is the question of whether the relevant terms were covenants or conditions precedent, because substantial compliance is required for a covenant in a contract, whereas full compliance is only required for a condition precedent. *See B & P Enters. v. Overland Equipment Co.*, 758 A.2d 1026, 1038 (Md. Ct. Spec. App. 2000); *see also Woznicki v. GEICO Gen. Ins. Co.*, 115 A.3d 152, 172 (Md. 2015) (noting that a condition precedent is a requirement "that must be performed before any obligation on the part of the assurer commences" (citation omitted)). But, because I find that Gehani did not substantially comply with the terms, his actions were insufficient to trigger Zurich's obligations by operation of either a covenant or a condition precedent.

7

loss containing the information we request to settle the claim. You must do this within 60 days after our request.").

The Himelfarbs filed an insurance claim for loss due to theft; the insurer requested a proof of loss, accompanied by certain information; and in response, the Himelfarbs provided a "Compliance Proof" that they signed under oath, and promised to supplement it later. *Id.* at 297–98. The insurer responded that the Compliance Proof did not comply with the requirement that the insureds file a proof of loss, because it did not contain all of the information the insurer had requested. *Id.* at 298–99. When the Himelfarbs did not then supplement the Compliance Proof or file a proof of loss, the insurer denied the claim. *Id.* at 299.

The Himelfarbs sued Hartford Insurance Co. for breach of contract. The trial court granted summary judgment for the insurer because the Himelfarbs had not filed a proof of loss within sixty days of the insurer's request, as the policy required. *Id.* The Court of Special Appeals reversed, and the Court of Appeals affirmed the intermediate court, reasoning that the insurer was not entitled to summary judgment when it had not included as part of the record its request for information to be included with the proof of loss, such that the court could not determine as a matter of law whether the insureds complied with the request. *Id.* at 300. The court observed that it previously had held that "substantial compliance by an insured with policy requirements for the submission of a proof of loss is sufficient." *Id.* at 301. The court concluded that the Himelfarbs only needed to show substantial compliance because, while the *submission* of a proof of loss was a condition precedent to the insurer's obligation to pay under the policy (requiring full compliance), the sixty-day *time limit* for submitting the proof of loss was a covenant (requiring only substantial compliance within that time). *Id.* at 300–01.

8

The *Himelfarb* Court distinguished *Government Employees Insurance Co. v. Harvey*, 366 A.2d 13 (Md. 1976), in which "the insured never filed *any* proof of loss within the applicable period," whereas in *Himelfarb*, "the insured filed the 'Compliance Proof' within sixty days of Hartford's request," and "that filing, together with the insureds' express promise of later supplementation, constituted substantial compliance with the sixty day time limit." *Himelfarb*, 736 A.2d at 303 (emphasis added). The court held:

> Substantial performance by the insured of the covenant as of the specified date may be found if, by that date, two elements are present: (1) the insured has furnished the insurer with information reasonably requested by the insurer to the extent that it is reasonably possible for the insured to do so, and (2) the insured expressly or impliedly promises to submit, when and as it is reasonably possible for the insured to do so, the balance of the information. . . . The burden is on the insured to prove that both elements have been met.

*Id.* at 306. It concluded that, under the policy before it, "[a] preliminary proof of loss that satisfie[d] both of these elements," such as the Himelfarbs had submitted, "suffice[d] . . . to comply with the sixty day provision." *Id.*

Here, Gehani submitted a copy of the initial report from the Baltimore City Fire Department to Zurich, although it is not clear when he submitted it. Gehani Dep. 26:15–17, 28:1–29:1. Additionally, he agreed to submit to a Statement Under Oath, although Zurich never took his statement. Emails 2. Also, at some point, Zurich sent an adjuster to the Property. Gehani Dep. 19:4–8, 27:17–25, 32:7–8, 49:6–21. Yet, Zurich's request for Gehani to submit a proof of loss by August 31, 2015 directed him to include with the proof of loss all documents to support his claim, and it specifically requested permit applications, permits, proposals, estimates, contracts, loan applications, loan agreements, and monthly statements for loans for any work performed at the Property since January 1, 2010, as well as photographs of the work and any lease agreements or documents regarding code violations at the Property since January 1, 2010;

9

in addition to utility records for the Property since January 1, 2013 and police reports generated as a result of the fire. July 2, 2015 Ltr. It is undisputed that Gehani did not submit a proof of loss or any of this requested information or respond to the request at all within the sixty-day period. *See* Jt. Stmt. ¶¶ 14–15.

Further, while he did submit some "documentation, including partial bank statements and water bills," Jt. Stmt. ¶ 15, and he attempted to obtain a report from the fire marshal, he did not do either until months later, in March of 2016. *See* Ltr. to Fire Marshal; Ltr. to Zurich, Jt. Ex. 10, ECF No. 22-14. He insists that he provided the documents "after [he] was able to parse out which charges were related to this property," stating that he "owns several properties in Maryland[,] . . . often employs contract workers and day laborers from Cases de Maryland to perform work on his properties, and did so on this case," and that "[t]he remainder of the work was done by handymen . . . ." Pl.'s Opp'n 4. But he has not shown that he made any effort to contact the fire marshal sooner or to obtain any other relevant documentation. And he does not justify his failure either to provide any information within the sixty-day period or to notify Zurich that he was trying to obtain the information and to promise within that same period to provide information as soon as he obtained it.

Thus, Gehani has not shown that he "furnished the insurer with information reasonably requested by the insurer to the extent that it is reasonably possible for the insured to do so." *See Himelfarb*, 736 A.2d at 306. Moreover, he has not shown that he "expressly or impliedly promise[d] to submit, when and as it is reasonably possible for [him] to do so, the balance of the information." *See id.* His meager, belated efforts are a far cry from substantial compliance with the Policy requirements that he provide the proof of loss and supporting documentation, and that he do so within sixty days of the insurer's request. Accordingly, the facts of this case are more

in line with *Harvey*, where no proof of loss was submitted, than *Himelfarb*, where a signed response to the proof of loss request was submitted, along with a promise to supplement. Because the undisputed facts establish that Gehani has not substantially complied with the Policy requirements for submitting a proof of loss and supporting documents, Zurich has no obligation under the Policy to pay Gehani.  *See id.*  Accordingly, Zurich is entitled to judgment as a matter of law, and I will grant Zurich's motion for summary judgment.  *See id.*; Fed. R. Civ. P. 56(a).

## **ORDER**

Accordingly, it is this <u>12th</u> day of <u>December</u> <u>2017</u>, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Defendant's Motion for Summary Judgment, ECF No. 22, IS GRANTED;
2. Judgment IS ENTERED in Defendant's favor; and
3. The Clerk SHALL CLOSE this case.

/S/
Paul W. Grimm
United States District Judge